party, for the purpose of being communicated to his legal adviser in his professional capacity, or by the legal adviser, for the purpose of being communicated to the party." And on page 145: "Communications, however, with an unprofessional lay agent, in anticipation of litigation, and with a view to the prosecution of a claim or a defence to a claim, are protected from production. Information procured through an agent relative to litigation, and with a view to it, is as much protected on principle as if it were procured through a solicitor; for it is in reality ·the litigant party who conducts the litigation, though he conducts it through a solicitor." Here we find a most distinct announcement, in the first quotation, that communications are not protected, unless they come through the solicitor; and in the other, one fully as explicit that the interposition of the solicitor is of no consequence. I suppose the learned author did not feel called upon to reconcile this conflict, or to do more than reflect the light thrown on his subject by the cases cited, however its color might vary at different moments. It seems to me, however, that the doctrine of page 145 is the true one, besides conforming to the latest cases. See Gibbs v. Ross, L. R. 8 Eq. 522; Cossey v. London, B. & S. C. Ry. Co., L. R. 5 C. 'P. 146; Chartered Bank of India v. Rich, 4 Best & S. 73. This is a sound application of the rule, that the privilege of the solicitor rests on that of his client. I have no fault to find with those cases which require the production of reports of agents, made in the ordinary course of their duty, before litigation, and which, therefore, stand like res gestae. Woolley v. North London Ry. Co., L. R. 4 C. P. 602; Mahony v. Nat. Widows' Life Assur. Fund, L. R. 6 C. P. 252. But when a lawsuit is begun, or is imminent, the parties to it ought to be at liberty to consult with each other, and with agents, without the necessity of producing the correspondence, at the call of the opposing party.

There is another sufficient ground for excluding these letters, that they relate to the case of Holt & Co., exclusively. It has always been the rule in equity, and has been adopted at common law in England and Massachusetts, that all which any party to the litigation is bound to discover is what relates to his opponent's case. Thus the cases in which the reports of agents have been required to be disclosed were reports of interviews with the party interrogating, or of the facts attending the injury to him, and matters tending to establish his side of the controversy. But these letters were written concerning the witness's own case exclusively, and have no reference to the title or evidence of Skillings & Co. They might possibly tend, if produced, to show defects in the witness's case, but none to show any strength in that of his opponent. For both these reasons, I decide that the witness is not bound to produce these letters for inspection by the assignees.

Order accordingly.

## Case No. 7,943.

### In re KRUM.

[7 Ben. 5.] [1]

District Court, S. D. New York. July, 1873.

PREFERENCE—JUDGMENT.

On March 26th, 1872, a judgment was recovered against K. upon a promissory note given for merchandise. It was recovered in hostility to K., and without any knowledge on the part of the judgment creditor that K. was not solvent. K., at the time, was the owner of real estate. On July 19th, 1872, a petition in bankruptcy was filed against K. and the assignee in bankruptcy afterwards sold the real estate. The judgment creditor claimed that the judgment should be paid in full by the assignee, out of the proceeds of the sales: *Held*, that the transaction was prima facie fraudulent under the act [of 1867 (14 Stat. 517)], and that the debt could not be paid in full.

This matter was presented to the judge on a statement of facts agreed upon between the assignee in bankruptcy and creditors who held a judgment. The judgment was recovered on March 26th, 1872, against [Uriah] Krum, the bankrupt, and was on the same day docketed in the county clerk's office of Ulster county. The judgment was recovered on a promissory note given for merchandise. It was recovered in hostility to Krum, and without any understanding with him, and without any knowledge on the part of the plaintiffs that Krum was not solvent. At that time Krum owned a farm in Ulster county. On July 19th a petition in bankruptcy was filed against Krum, in which proceedings an assignee was appointed, who sold the farm and received the proceeds. The assets were not sufficient to pay the bankrupt's creditors in full. The judgment creditors claimed that the judgment should be paid in full out of the proceeds of the real estate.

BLATCHFORD, District Judge. The transaction seems to have been one out of the usual and ordinary course of business of the debtor, and, therefore, prima facie fraudulent, under the act. I see nothing to rebut that presumption, and therefore do not see how the debt can be paid in full.

## Case No. 7,944.

### KRUMBAAR v. BURT et al.

[2 Wash. C. C. 406.] [2]

Circuit Court, D. Pennsylvania. Oct. Term, 1809.

BANKRUPTCY—CONTINGENT INTERESTS—ASSETS.

1. A. H. devised an estate to C. S. for life, and after the death of C. S. he directed that the estate should be sold, and divided among the grandchil-

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]